RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0147p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMANDA G. BROWN; HARROGATE FAMILY PRACTICE LLC,

        *Plaintiffs-Appellants*,

    *v.*

BLUECROSS BLUESHIELD OF TENNESSEE, INC.,

        *Defendant-Appellee*.

No. 15-5739

---

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:14-cv-00223—Curtis L. Collier, District Judge.

Argued: March 17, 2016

Decided and Filed: June 27, 2016

Before: KETHLEDGE, DONALD, and ROTH[*], Circuit Judges.

---

## COUNSEL

**ARGUED:** Hudson T. Ellis, ERIC BUCHANAN & ASSOCIATES, PLLC, Chattanooga, Tennessee, for Appellants. James T. Williams, MILLER & MARTIN PLLC, Chattanooga, Tennessee, for Appellees. **ON BRIEF:** Hudson T. Ellis, Eric L. Buchanan, ERIC BUCHANAN & ASSOCIATES, PLLC, Chattanooga, Tennessee, for Appellants. James T. Williams, Donald J. Aho, Robert F. Parsley, MILLER & MARTIN PLLC, Chattanooga, Tennessee, for Appellees.

---

[*]The Honorable Jane R. Roth, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

---

**OPINION**

---

ROTH, Circuit Judge. Healthcare provider Harrogate Family Practice, LLC, and its owner, Amanda Brown (collectively Harrogate), brought suit under Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA) to *inter alia*, enjoin Blue Cross Blue Shield of Tennessee (Blue Cross) from recouping payments for services Harrogate provided to Blue Cross members. The district court dismissed for lack of subject matter jurisdiction, finding that Harrogate lacked standing under ERISA. On appeal, Harrogate argues that it has direct standing to sue as an ERISA beneficiary or, in the alternative, that it acquired derivative standing via an assignment of benefits from Blue Cross members. We conclude that while Harrogate does have derivative standing through an assignment of benefits, its claim regarding recoupments falls outside the scope of that assignment and therefore we affirm the judgment of the district court.

## I. Background

Harrogate is a healthcare provider that participates in Blue Cross networks, regularly treating patients who are participants and beneficiaries under health-benefit plans administered by Blue Cross. Per industry practice, Harrogate's patients signed an "Assignment of Benefits Form," allowing Harrogate to bill Blue Cross directly for payment of services.[1] The arrangement between Harrogate and Blue Cross is governed by a Provider Agreement, which allows Blue Cross to perform post-payment audits and recoup overpayments from Harrogate in the event a payment error is detected.[2] The Provider Agreement includes a clause requiring that disputes between Blue Cross and Providers be submitted to binding arbitration.

---

[1] The "Assignment of Benefits Form" states, in relevant part, "I request that payment of authorized insurance benefits . . . be made on my behalf to Harrogate Family Practice, LLC . . . . I understand that I am financially responsible to the organization for any charges not covered by Health care benefits."

[2] The Provider Agreement provides, in relevant part, "Claim payments made by BCBST are contingent upon the accuracy of diagnostic and other information provided to BCBST. If BCBST determines that it has made erroneous overpayments or underpayments to the Professional, BCBST may recover or make additional payments to correct such errors. . . . If BCBST determines in its sole discretion that it has made an overpayment to the Professional, the Professional agrees to reimburse BCBST for such overpayment and BCBST may recover the

At issue are claims filed by Harrogate for antigen leukocyte cellular antibody (ALCAT) tests, which purport to identify certain food allergies. Blue Cross claims that these tests are "unproven," with "little or no scientific rationale," and therefore categorizes the tests as "investigational." Investigational treatments are not "covered, compensable services" under Blue Cross's Manual for Providers, which is incorporated by reference into the Provider Agreement. The Provider Agreement also specifies that Harrogate may not "back-bill" patients for un-reimbursed, investigational treatments unless prior to rendering such services, "the Provider has entered into a *procedure-specific* written agreement with the Member, which has advised the Member of his/her payment responsibilities."

In November 2013, Blue Cross conducted two audits of Harrogate's billings and found improper payments to Harrogate for ALCAT tests. Based on these findings, Blue Cross began recouping overpayments from Harrogate. Harrogate brought suit in the United States District Court for the Eastern District of Tennessee, seeking declaratory and injunctive relief to bar further recoupment by Blue Cross under ERISA §§ 502(a)(3) and 502(a)(1)(B), as well as compensatory relief for funds that had allegedly been wrongfully recouped. Blue Cross moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Harrogate lacked standing under ERISA, and also moved to compel arbitration under the Provider Agreement. The district court granted Blue Cross's motion to dismiss, holding that Harrogate did not meet the statutory definition of "beneficiary" and that Harrogate had not received a valid assignment for the purpose of conferring derivative standing to bring suit under ERISA. Harrogate now appeals.

---

amount of such overpayment by offsetting the overpayment against what is owed to the Professional for other claims or by requesting repayment of the overpayment from the Professional."

## II.[3]  Direct Standing under ERISA

ERISA's civil enforcement provision empowers only plan participants and beneficiaries to bring suit to recover their benefits under a plan.  29 U.S.C. § 1132(a)(1)(b).  A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  Harrogate argues that it meets the statutory definition of "beneficiary" because it is "designated by the applicable ERISA Plans to receive and [does] in fact receive Plan benefits in exchange for medical care provided to participants."

The Sixth Circuit has long rejected this theory of ERISA standing.  "The fact that [a healthcare provider] may be entitled to payment from [an insurance company] as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing."  *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001).  This position is consistent with every other circuit that has considered the issue.  *See Pa. Chiropractic Ass'n v. Independence Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 930 (7th Cir. 2015) (holding that healthcare providers "are not 'beneficiaries' as ERISA uses that term."); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) (holding that a health care provider "cannot bring claims for benefits on its own behalf" under ERISA); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) ("We conclude that the Hospital could not have brought its claims under § 502(a) because the Hospital does not have standing to sue under that statute."); *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) ("Healthcare providers . . . are not considered 'beneficiaries' or 'participants' under ERISA.").  The Second Circuit provided an excellent summary of the logic behind these holdings in its recent *Rojas* decision, in which it concluded that:

---

[3]The District Court entered a final judgment granting Blue Cross's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Harrogate timely appealed the dismissal.  We have jurisdiction over the present appeal pursuant to 28 U.S.C. § 1291.  We review the District Court's dismissal for lack of subject matter jurisdiction *de novo*, but accept any factual findings that the district court made in its analysis unless clearly erroneous.  "Where a defendant moves to dismiss a complaint for the lack of subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Davis v. United States*, 499 F.3d 590, 593-94 (6th Cir. 2007) (internal quotations omitted).

"Beneficiary," as it is used in ERISA, does not without more encompass healthcare providers. Although the term "benefit" is not defined in ERISA, we are persuaded that Congress did not intend to include doctors in the category of "beneficiaries." Benefits to which a beneficiary is entitled are bargained-for goods, such as "medical, surgical or hospital care," rather than a right to payment for medical services rendered . . . . While [the Provider] may indeed be entitled to a benefit *qua* benefit through operation of the plan—*i.e.*, payment for its medical services—[the Provider] confuses the issue. The "benefit" the plan provides belongs to [the Provider's] patients; [the Provider's] claim to payment for covered services is a function of how [the insurer] reimburses healthcare providers under the Benefit Plan. That right to payment does not a beneficiary make.

*Rojas v. Cigna Health and Life Ins. Co.*, 793 F.3d 253, 257-58 (2d Cir. 2015) (internal citations omitted).

Harrogate has offered no persuasive reasoning to disturb our previous holding or contradict those of the other circuits. Thus, consistent with our previous decision in *Ward*, we hold that a healthcare provider does not qualify as a statutory beneficiary under ERISA and therefore affirm the district court's finding that Harrogate lacks direct standing to bring its claims.

## III. Derivative Standing under ERISA

Harrogate asserts that even if it lacks standing as a statutory beneficiary, it can still pursue its claims under a theory of derivative standing, based on the "Assignment of Benefits Forms" its patients signed. Derivative standing confers upon the holder of a valid assignment "standing to sue in place of the assignor." *Misic v. Bldg. Serv. Emps. Health and Welfare Trust*, 789 F.2d 1374, 1378 (9th Cir. 1986). As we previously held, a provider obtains derivative standing to sue under ERISA only when the patient "actually convey[s]" a "valid assignment of benefits" under the plan. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991). Blue Cross argues that Harrogate's "Assignment of Benefits Forms" provide only for direct payment and are therefore insufficient to grant an assignment of rights for purposes of derivative standing. The district court agreed, finding "no consensus among the federal courts regarding whether language that provided for direct payment of benefits constitutes an assignment for purposes of ERISA."

However, there is now a broad consensus that "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." *North Jersey Brain and Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015); s*ee also Rojas*, 793 F.3d at 258 (2d Cir. 2015); *Spinedex*, 770 F.3d at 1289 (9th Cir. 2014); *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 889 (5th Cir. 2003); *I.V. Servs. of Am. v. Inn Dev. & Mgmt.*, 182 F.3d 51, 54 n.3 (1st Cir. 1999); *Kennedy v. Conn. General Life Ins. Co.*, 924 F.2d 698, 701 (7th Cir. 1991). Indeed, the case that the district court relied most heavily upon for rejecting Harrogate's claim of derivative standing was recently overturned on appeal by the Third Circuit in *American Chiropractic*, which found that an assignment of benefits *was* effective to grant the healthcare provider derivative standing under ERISA. *Am. Chiropractic Ass'n. v. Am. Specialty Health Inc.*, 625 F. App'x. 169, 174-75 (3d Cir. 2015). In that case, the Third Circuit recognized that an assignment of the right to payment—with language virtually identical to that in Harrogate's "Assignment of Benefits" form[4]—necessarily included the ability to enforce that right by bringing suit under ERISA to collect money owed. In a companion case, the Third Circuit elaborated that "the assignment is only as good as payment if the provider can enforce it" and therefore, "[a]n assignment of the right to payment logically entails the right to sue for non-payment." *North Jersey Brain*, 801 F.3d at 372-73.

These rulings are consistent with Congress's stated purpose in enacting ERISA: to "protect [] the interests of participants in employee benefit plans." 29 U.S.C. § 1001(b). Therefore,

> [i]t does not seem that the interests of patients or the intentions of Congress would be furthered by drawing a distinction between a patient's assignment of her right to receive payment and the medical provider's ability to sue to enforce that right. The value of such assignments lies in the fact that providers, confident in their right to reimbursement and ability to enforce that right against insurers, can treat patients without demanding they prove their ability to pay up front. Patients increase their access to healthcare and transfer responsibility for litigating unpaid

---

[4]In *American Chiropractic*, the relevant assignment "authorized payment of medical benefits to [the provider] for all services rendered." Such an assignment was sufficient to "afford [the Provider] standing to sue his patients' insurers for reimbursement for services he provided." 625 F. App'x. at 174-75. Similarly, Harrogate's "Assignment of Benefits Forms" read: "I request that payment of authorized insurance benefits . . . be made on my behalf to Harrogate Family Practice, LLC."

claims to the provider which will ordinarily be better positioned to pursue those claims. These advantages would be lost if an assignment of payment of benefits did not implicitly confer standing to sue.

*North Jersey Brain*, 801 F.3d at 373-74 (internal citations omitted).

We agree that the assignment of the right to payment is sufficient to confer derivative standing to bring suit for non-payment under ERISA. We therefore reverse the district court's holding that Harrogate's "Assignment of Benefits Forms" were not valid assignments of benefits for the purpose of conferring derivative standing.

**IV.  Scope of Harrogate's Derivative Standing**

Harrogate presents a third, more novel question for this court:  whether its present suit for recoupments falls within the scope of its derivative standing under ERISA. A healthcare provider-assignee "stands in the shoes of the beneficiary," and can only assert claims that could have been brought by patients themselves. *Blue Cross of Calif. v. Anesthesia Care Assoc. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014) ("It is a basic principle of assignment law that an assignee's rights derive from the assignor. That is, an assignee of a contract occupies the same legal position under a contract as did the original contracting party, he or she can acquire through the assignment no more and no fewer rights than the assignor had, and cannot recover under the assignment any more than the assignor could recover.") (internal quotations omitted). In the present case, the recoupment of payments is governed by the Provider Agreement between Harrogate and Blue Cross, not the employee benefits agreements between Blue Cross and its members. Thus, Blue Cross argues that a claim to enjoin recoupments falls outside the scope of Harrogate's assignment because it could not have been brought by the patient-assignors. Harrogate disagrees, claiming that Blue Cross is attempting to use its post-payment recoupment procedure to make an end-run around the protections of ERISA.

Both parties root their arguments in the seminal Ninth Circuit case *Blue Cross of California v. Anesthesia Care*, 187 F.3d 1045 (9th Cir. 1999). In that case, the court considered a dispute between Blue Cross and medical providers relating to changes to the fee schedule laid out in the Blue Cross provider agreements and held that the providers' claims could not be

brought under ERISA because "the Providers are asserting contractual breaches, and related violations . . . that their patient-assignors could not assert [because] the patients simply are not parties to the provider agreements between the Providers and Blue Cross." *Id.* at 1051.

While on its face the Ninth Circuit's holding appears favorable to Blue Cross, the reasoning of the decision muddies the water. In determining that the providers' claims fell outside the scope of their assigned ERISA standing, the court focused on the dichotomy between "the right to payment, which might be said to depend on the patients' assignments to the Providers" and "the amount, or level of payment, which depends on the terms of the provider agreements." *Id.* (emphasis removed). As the Fifth Circuit, which adopted the Ninth Circuit's reasoning, clarified in *Lone Star OB/GYN*, "any determination of benefits under the terms of a plan—i.e., what is 'medically necessary' or a 'Covered Service'—does fall within ERISA." *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 531 (5th Cir. 2009). This distinction between "right to payment"—which falls within a provider's derivative standing for ERISA purposes—and "rate of payment"—which does not—has since been adopted by other circuits as well. *Conn. State Dental Ass'n*, 591 F.3d 1337, 1350 (11th Cir. 2009); *Pascack Valley*, 388 F.3d at 403-404.

Seizing on this dichotomy, Harrogate argues that the present case is a clear example of a dispute over its "right to payment" for services rendered. To this end, Harrogate correctly asserts that if Blue Cross had made an initial adverse benefit determination and denied Harrogate's claims upfront, Harrogate would have derivative standing to sue for payment, because the patients—the assignors of Harrogate's status—could have brought that same suit. Thus, Harrogate argues that Blue Cross is attempting to evade ERISA by disguising an adverse benefit determination by recouping money post-payment, rather than denying it upfront.

We find Harrogate's position colorable but ultimately unpersuasive. The fundamental basis for the Ninth Circuit's ruling in *Anesthesia Care* was a distinction between claims that could have been brought by the patient-assignors and claims that could only have been brought by the healthcare providers. In the present case, the patient-assignors are not party to the Provider Agreement that governs the recoupment process, and Blue Cross has no right to recoup payments for medical care made to its members. It is axiomatic that "[a]n assignee acquires no

greater rights than his assignor." *Rojas*, 793 F.3d at 258-59 (internal quotations omitted). Because Harrogate's present suit to enjoin Blue Cross's recoupments is not a suit that Blue Cross members could have brought, it cannot be covered by those members' assignment of benefits. While the ultimate effect on Harrogate may be the same (i.e. non-payment), Harrogate's grievance with Blue Cross is uniquely its own; it is not derivative of Harrogate's patients.

The conclusion that the present dispute falls outside the scope of Harrogate's assigned standing is further bolstered by the fact that the patient-assignors are unaffected by the outcome of this litigation. The Provider Agreement states that

> Providers may not seek payment from a Blue Cross Blue Shield of Tennessee Member where . . . [s]ervices rendered are considered investigational by Blue Cross Blue Shield of Tennessee and are therefore non-reimbursable, unless *prior* to rendering such services to the member, Provider has entered into a *procedure-specific* written agreement with the Member, which advised the Member of his/her payment responsibilities.

Provider Manual, at ¶ 14. Thus, Harrogate cannot pass the cost of Blue Cross's recoupments back onto its patients. That the rights of insureds and their families are not at risk reinforces the inapplicability of ERISA. Congress enacted ERISA "to protect the economic security of American employees by regulating employer-sponsored pension and welfare plans." Peter K. Stris & Victor O'Connell, *ERISA & Equity*, 29 ABA J. Lab. & Emp. L. 125 (2013). Allowing Harrogate to litigate a contractual dispute in federal court under ERISA is not "necessary to further the statute's purposes." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 (1983).

## V. Conclusion

For the foregoing reasons we affirm the judgment of the district court.