**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DB HEALTHCARE, LLC, DBA Metro Center Health Care; AVD HEALTHCARE, LLC, DBA Mountain Vista Health Center; MH HEALTHCARE, LLC, DBA North Health Center; SV HEALTHCARE, LLC, DBA White Rock Health Center; QUINN CHIROPRACTIC, LLC, DBA White Rock Health Center; CK HEALTHCARE, LLC, DBA Avondale Health Center; TM HEALTHCARE, LLC, DBA Avondale Health Center; KM HEALTHCARE, LLC, DBA Avondale Health Center; KD CHIROPRACTIC, LLC, DBA White Rock Health Center; EW HEALTHCARE, LLC, DBA Greenway Health Center; PW HEALTHCARE, LLC, DBA Greenway Health Center; MARY MELISSA HANDS; VICTORIA TWEEDY; ROBERT ALEXANDER; SIMRAN SETHI; SARAH QUINN; TERESA MELOCHE; ALLISON WOODWORTH; JOE MELBY; CRYSTY FRICK; PATRICIA PARADIS, *Plaintiffs-Appellants*, v. | No. 14-16518 D.C. No. 2:13-cv-01558-NVW |

BLUE CROSS BLUE SHIELD OF
ARIZONA, INC.,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

ADVANCED WOMEN'S HEALTH
CENTER, INC.,
                    *Plaintiff-Appellant*,

                    v.

ANTHEM BLUE CROSS LIFE AND
HEALTH INSURANCE COMPANY,
                    *Defendant-Appellee.*

No. 14-16612

D.C. No.
1:13-cv-01145-
AWI-JLT

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted July 7, 2016
San Francisco, California

Filed March 22, 2017

Before: Marsha S. Berzon, and N. Randy Smith, Circuit Judges, and Dana L. Christensen,[*] Chief District Judge.

Opinion by Judge Berzon

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel affirmed two district court judgments dismissing ERISA actions brought by health care providers designated to receive direct payments from employee health plan administrators for medical services.

The panel held that neither direct statutory authority nor derivative authority through assignment authorized the health care providers to bring suit in federal court under ERISA's civil enforcement provisions. Agreeing with other circuits, the panel reaffirmed that health care providers are not health plan beneficiaries who may sue for declaratory relief and money damages under ERISA § 502(a)(1)(B) or injunctive relief under ERISA § 502(a)(3). Rather, a health care provider must bring claims derivatively, relying on its patients' assignments of their benefit claims. The panel held that the health care providers here, however, lacked derivative authority to sue, given the nature of the governing agreements

---

[*] The Honorable Dana L. Christensen, United States Chief District Judge for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and of the purported assignments. In one case, the governing employee benefit plans contained non-assignment clauses that overrode any purported assignments. In the other case, although the provider agreement permitted assignment, and payment authorization forms could be construed as assigning the provider limited rights, the provider's claims fell outside the scope of the assigned rights.

## COUNSEL

Richard J. Quadrino (argued), Harold J. Levy, and Eugene R. Pagano, Quadrino Law Group P.C., Melville, New York; Tod F. Schleier and Bradley H. Schleier, Schleier Law Offices, Phoenix, Arizona; for Plaintiffs-Appellants.

Anthony F. Shelley (argued), Michael N. Khalil, and Adam P. Feinberg, Miller & Chevalier Chartered, Washington, D.C., for Defendant-Appellee Blue Cross Blue Shield of Arizona, Inc.

Eileen R. Ridley (argued), Alan R. Ouellette, and Michael A. Naranjo, Foley & Lardner LLP, San Francisco, California, for Defendant-Appellee Anthem Blue Cross Life and Health Insurance Company.

**OPINION**

BERZON, Circuit Judge:

These two cases involve reimbursement disputes between health care providers and employee health benefit plan administrators. We decide the cases together because they raise a common central issue: whether a health care provider designated to receive direct payment from a health plan administrator for medical services is authorized to bring suit in federal court under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. We consider two separate potential bases for such authority under ERISA's civil enforcement provisions: direct statutory authority and derivative authority through assignment. Although the contractual relationships between the health care providers and the plan administrators, and between the providers and the patients, in these two cases differ in relevant ways, we conclude in both cases that the providers cannot enforce ERISA's protections in federal court on either basis.

## I. Background

The Plaintiffs-Appellants in these cases are health care providers ("Providers") who furnish medical services to subscribers[1] of employee health benefit plans. The benefit plans are governed by either ERISA (the private employer plans) or the Patient Protection and Affordable Care Act

---

[1] We use the term "subscribers" to refer to individuals covered under the health benefit plans. We avoid the terms "participant" and "beneficiary" to describe these individuals because the precise meaning of those terms is central to this dispute.

("ACA") (the government employer plans). The Plaintiffs in *DB Healthcare* are twelve medical facilities located in and around Phoenix, Arizona, and ten nurse practitioner employees of those facilities (collectively, "DB Healthcare Providers"). The Plaintiff in *Advanced Women's Health Center* is a medical facility in Bakersfield, California ("the Center"). Defendants-Appellees Blue Cross Blue Shield of Arizona, Inc. ("Blue Cross") and Anthem Blue Cross Life and Health Insurance Company ("Anthem") are health insurers, plan administrators, and/or claims administrators for the relevant employee benefit plans.

The reimbursement disputes in these cases share a number of common facts. In 2010 and 2011, Providers performed certain blood tests and related services for plan subscribers and submitted reimbursement claims to either Blue Cross or Anthem. Blue Cross and Anthem processed the claims and reimbursed Providers. On completion of post-payment reviews, however, the plan administrators determined that Providers were not entitled to reimbursement for the blood tests, albeit for different reasons. In *DB Healthcare*, Blue Cross determined that the tests were investigational and thus excluded from coverage. In *Advanced Women's Health Center*, Anthem determined that the Center used faulty practices to bill for the tests and so was not entitled to reimbursement.

At that point, Blue Cross and Anthem informed Providers that the prior reimbursements for the blood tests were in error and requested repayments totaling $237,000 and $295,912.87, respectively. Providers disputed Blue Cross and Anthem's authority retroactively to recoup the reimbursements and refused to pay. Blue Cross responded by restating its payment demand to DB Healthcare Providers, threatening to

withhold recredentialing for the in-network nurse practitioners, refusing to credential newly hired nurses, and threatening to terminate the relevant provider agreements. Anthem went one step further, withholding reimbursements from Advanced Women's Health Center in 2013 for unrelated claims as a means of recouping the disputed past payments.

Several types of contracts govern the relationships between the subscribers, the plan administrators, and the providers in each case: (1) Employee benefit plans provide the terms of the insurance provided to the subscribers. (2) Payment authorizations or assignment of benefits forms executed by subscribers assign some rights to the providers. (3) Provider agreements govern the relationships between the providers and the plan administrators. Each of these contracts is relevant to our analysis.

In *DB Healthcare*, the governing employee benefit plans prohibit patients from assigning any of their rights under the plans to third parties.[2]   Despite this prohibition, DB Healthcare Providers' patients executed "assignment of benefits" forms purporting to assign certain plan rights to DB Healthcare Providers. Unlike in *DB Healthcare*, the benefits plans in *Advanced Women's Health Center* do not prohibit assignment of benefits. The Center's patients signed forms

---

[2] The record does not include all the employee benefit plans at issue in the case. DB Healthcare Providers submitted an exemplar plan in support of their complaint. The sample plan includes a non-assignment clause, which reads, in relevant part: "The benefits contained in this plan, and any right to reimbursement or payment arising out of such benefits, are not assignable or transferable, in whole or in part, in any manner or to any extent, to any person or entity. . . ." The district court relied on this provision in the exemplar plan to find that the governing plans contained valid non-assignment clauses. This finding is not contested on appeal.

authorizing Anthem to pay the Center directly for health care services rendered to plan subscribers. Those forms read: "I Hereby Authorize My Insurance Benefits To Be Paid Directly to the Physician And Acknowledge That I Am Financially Responsible for Any Unpaid Balance."

The provider agreements grant some health care providers in-network status for the benefit plans administered by Anthem or Blue Cross. Five of the ten nurse practitioner Providers are credentialed by Blue Cross as in-network providers and the five others seek such credentialing. Advanced Women's Health Center is an in-network provider for health plans administered by Anthem. In-network providers agree to a fixed schedule of fees for services and can bill the insurers directly for health care services rendered to plan subscribers. In fact, the provider agreements *require* Providers to seek payment for medical services rendered only from the relevant plan administrator, not from patients (subject to limited exceptions).[3]

In response to recoupment strategies by Blue Cross and Anthem, DB Healthcare Providers and the Center, respectively, filed complaints in federal district court. The specific claims in *DB Healthcare* and *Advanced Women's Health Center* differ slightly, although both sets of providers generally allege that the claims administrators violated ERISA when they unilaterally determined that the blood testing procedures and related services were not reimbursable and used various strategies to recoup payments already made.

---

[3] In *DB Healthcare*, just the in-network nurse practitioners, not the out-of-network practitioners or the facilities themselves, have provider agreements with Blue Cross.

DB Healthcare Providers alleged two causes of action under ERISA in their complaint.[4]    First, they sought injunctive relief regarding Blue Cross's refusal to credential nurse-practitioners and its threat to cancel provider agreements, alleging that Blue Cross violated ERISA's prohibition against retaliation for the exercise of rights guaranteed by employee benefit plans. *See* 29 U.S.C. § 1140. Second, they sought a declaratory judgment that Blue Cross's recoupment efforts violate the ERISA Claims Procedure, 29 U.S.C. § 1133, and the ERISA Claims Procedure regulation, 29 C.F.R. § 2560.503-1, which provide procedural protections for ERISA claimants.    Specifically, DB Healthcare Providers alleged that Blue Cross violated the requirement that plan administrators notify claimants of adverse benefit determinations within thirty days of receiving a claim.

Advanced Women's Health Center also challenged Anthem's recoupment efforts, asserting four causes of action in its complaint, three under ERISA and one under the Declaratory Judgment Act, 28 U.S.C. § 2201. Under ERISA, which governs private employer plans, the Center: (1) sought a declaratory judgment that Anthem's reversal of benefit determinations and offsetting of asserted overpayment against other reimbursements violate ERISA's Claims Procedure, 29 U.S.C. § 1133, and the ERISA Claims Procedure regulation, 29 C.F.R. § 2560.503-1, and an injunction precluding such offsetting; (2) sought monetary damages for past recoupments; and (3) requested declaratory and

---

[4] DB Healthcare Providers also brought a state law breach of contract claim with respect to government employee benefit plans.  The district court declined to exercise supplemental jurisdiction over the state law claim, dismissing the claim without prejudice.

injunctive relief regarding Anthem's alleged violation of its fiduciary duty to plan beneficiaries and participants. Invoking the Declaratory Judgment Act, the Center alleged that the government employee benefit plans administered by Anthem are also subject to the ERISA Claims Procedure regulation and sought a declaratory judgment that Anthem's recoupment of payments for claims made under those plans was unlawful.

The district courts in both *Advanced Women's Health Center* and *DB Healthcare* dismissed the claims, holding that the health care providers lacked authority to bring claims under ERISA. In *Advanced Women's Health Center*, the district court also dismissed the claim brought under the Declaratory Judgment Act, holding that government plans are, by their terms, exempt from the ERISA Claims Procedure regulation. The providers in both cases timely appealed.

## II. Discussion

### A.

ERISA's civil enforcement provisions specify which categories of individuals and entities may enforce each of the statute's protections. The relevant provisions state: "(a) A civil action may be brought– (1) by a participant or beneficiary– (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to

obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  ERISA § 502(a), 29 U.S.C. § 1132 (a)(1),(3).  Providers maintain that they are "beneficiar[es]" for purposes of § 502(a) and so may bring suit directly under that statute.

We note, preliminarily, that our cases discussing whether a plaintiff is authorized to sue under ERISA's civil enforcement provisions often refer to the question as whether the plaintiff has "standing" or "statutory standing" to sue under ERISA.  *See e.g.*, *Harris v. Amgen, Inc.*, 573 F.3d 728, 732 (9th Cir. 2009) (examining whether a plaintiff has "standing under ERISA"); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1477 (9th Cir. 1991) ("Under ERISA, a beneficiary has standing to bring a civil action for non-payment.").   This common shorthand suggests that subject matter jurisdiction may also be at stake.  It is not.  The question whether Congress has granted a private right of action to a particular plaintiff is *not* a jurisdictional requirement.  "[A] dismissal for lack of statutory standing [under ERISA] is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction."  *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).[5]  For clarity on this point, we avoid in this opinion references to Providers' "standing," and so turn to the question whether Providers may bring suit directly under ERISA § 502(a).

---

[5] The district court in *Advanced Women's Health Center* dismissed the Center's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  That error, however, does not affect our analysis, because we review dismissals under both Rule 12(b)(1) and Rule 12(b)(6) *de novo*. *See Vaughn*, 567 F.3d at 1024.

"[Section] 502(a) [of ERISA] . . . demonstrates Congress' care in delineating the universe of *plaintiffs* who may bring certain civil actions." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000). With regard to the plaintiffs specified in § 502(a), "Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 (1983), *superseded by statute on other grounds*, 28 U.S.C. § 1441(e).

Among the parties who may sue under ERISA § 502(a) are health plan "beneficiaries." Providers argue that they are "beneficiaries" under ERISA and so may sue for declaratory relief and money damages under ERISA § 502(a)(1)(B), as well as for injunctive relief under § 502(a)(3).

We have held before, and reiterate now, that health care providers are not "beneficiaries" within the meaning of ERISA's enforcement provisions. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.* emphasized this rule when it held, "a non-participant health care provider . . . cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims." 770 F.3d 1282, 1289 (9th Cir. 2014), *cert denied, United Healthcare of Ariz. v. Spinedex Physical Therapy USA, Inc.*, 136 S. Ct. 317 (2015). As *Spinedex*'s analysis is brief, we expand on it here.

ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Here, the employee benefit plans or the plan subscribers, or both, designate Providers to receive direct

payment from Anthem or Blue Cross.  This remuneration for medical services rendered is not a "benefit" under ERISA.

Although ERISA does not define the word "benefit," in isolation, the definition of "employee welfare benefit plans" in ERISA, in conjunction with the common definition of the term "benefit," supports the conclusion that a payment to a medical provider for services rendered is not properly termed a "benefit" to the provider.  ERISA defines "employee welfare benefit plans," in part, as any plan, fund or program maintained by an employer or an employee organization that "was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services." *Id.* § 1002(1).  The term "benefit," in context, quite evidently refers to the specific advantages provided to covered employees, as a consequence of their employment, for particular purposes connected to alleviating various life contingencies.

That statutory usage comports with dictionary definitions of "benefit," which include "[a] form of compensation, such as paid vacation time, subsidized health insurance, or a pension, provided to employees in addition to wages or salary as part of an employment arrangement." *American Heritage Dictionary of the English Language* 168 (5th ed. 2011).  The statutory usage is also consistent with a more general definition of "benefit," "something that promotes or enhances well-being; an advantage." *Id.*  Neither of these meanings of

the term "benefit" suggests that a fee owed in exchange for a service is included.

Both the statutory context and common usage thus illustrate that in the ERISA context, as the Second Circuit has explained, the "[b]enefits to which a beneficiary [under ERISA] is entitled are bargained-for goods, such as medical, surgical, or hospital care, . . . rather than a right to payment for medical services rendered." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015) (internal citations and quotation marks omitted). Although the "benefits" provided under ERISA plans are often monetary rather than "goods" in the tangible sense, they are provided only in the event of specified contingencies, as part of an overall compensation package. They are not payment in exchange for any discrete services.

Health care providers' patients are thus the ones who receive ERISA health benefits, not the providers themselves. Neither a designation in a health benefit plan nor an assignment by a patient allowing a health care provider to receive direct payment for health services entitles a health care provider to "benefits" on its own behalf. Providers are therefore not ERISA "beneficiar[ies]." They do not have direct authority as beneficiaries to sue under ERISA § 502(a)(1)(B) or § 502(a)(3) to recover payments due them for services rendered, or otherwise to enforce the statute's protections.

This holding is consistent with the decisions of other circuits, which have uniformly concluded that health care providers are not "beneficiar[ies]" for ERISA purposes, even when the providers are contractually authorized to receive direct payment for medical services rendered subscribers.

*See Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 546 (6th Cir. 2016); *Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 930 (7th Cir. 2015); *Rojas*, 793 F.3d at 257–58; *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004), *as amended* (Dec. 23, 2004); *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001); *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001).

In the face of this great weight of authority, Providers insist that many circuits have held that health care providers *are* ERISA "beneficiaries." Not so. The cases Providers rely upon in support of this assertion did not so conclude.

*City of Hope National Medical Center v. Healthplus, Inc.*, 156 F.3d 223, 224–26 (1st Cir. 1998), and *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698, 701 (7th Cir. 1991), both involved providers that held assignments from their patients and so had derivative authority to sue for their patients' benefits. Although *Kennedy* suggested that the health care provider was a "beneficiary," a close look at the opinion reveals that the Seventh Circuit's language covered only derivative authority suits, as later cases have clarified. *See, e.g.*, *Davidowitz*, 946 F.2d at 1479 ("[T]he plaintiff health care provider in *Kennedy* sued under . . . an assignment." ). In *Pennsylvania Chiropractic Ass'n*, the Seventh Circuit eliminated any doubt in this regard when it held that health care providers "are not 'beneficiaries' as ERISA uses that term." 802 F.3d at 930.

Neither *Ruttenberg v. U.S. Life Insurance Co.*, 413 F.3d 652 (7th Cir. 2005), nor *Peterson v. American Life & Health Insurance Co.*, 48 F.3d 404 (9th Cir. 1995), involved

recovery by health care providers of payments due.  Instead, both cases concerned *patient* claims for health plan *coverage*, and considered whether an independent contractor and a partner in a company – workers who do not fit the traditional definition of an employee – are ERISA beneficiaries. *Ruttenberg*, 413 F.3d at 661–63; *Peterson*, 48 F.3d at 408.

In sum, *Spinedex*, consistently with all other circuits that had addressed the question, held that health care providers are not "beneficiar[ies]" within the meaning of § 502(a) of ERISA and may not bring suit under ERISA in that capacity. We reaffirm that holding of *Spinedex*.

## B.

Providers do not enjoy derivative authority to bring their claims either.  As a general matter, "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider."  *Misic v. Bldg. Serv. Emps. Health and Welfare Tr.*, 789 F.2d 1374, 1377 (9th Cir. 1986) (per curiam).  So a health care provider in appropriate circumstances *can* assert the claims of an ERISA participant or beneficiary. *See id.*  Here, however, Providers lack such derivative authority to sue under ERISA § 502(a)(1)(B) or § 502(a)(3) given the nature of the governing agreements and of the purported assignments.

(i) The providers in *DB Healthcare* lack derivative standing because they do not hold valid assignments.  The governing employee benefit plans contain non-assignment

clauses that override any purported assignments.[6]  "ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."  *Davidowitz*, 946 F.2d at 1481.

(ii) The Center lacks derivative authority for a different reason.  Their provider agreement with Anthem permits assignment, and payment authorization forms in the record could be construed as assigning the Center limited rights.  But the claims made here fall outside the scope of those assigned rights.

The Center's patients signed forms that read, "I Hereby Authorize My Insurance Benefits to Be Paid Directly to the Physician."  These forms do not use the terms "assign" or "assignment," but no such specific language is necessary to effectuate an assignment of rights.  "No words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient."  29 Williston on Contracts 74:3 (4th ed.).  We shall assume therefore that these payment authorizations assign the physicians limited rights to payment under ERISA.  *See BlueCross BlueShield of Tenn.*, 827 F.3d at 544 n.1, 546–47 (finding a limited assignment of rights where an "Assignment of Benefits Form" stated "I request that payment of authorized insurance benefits . . . be made on my behalf to [my provider]").

---

[6] The exemplar assignment of benefits forms submitted by DB Healthcare Providers to the district court are blank and unsigned.  As a result, the district court found that DB Healthcare Providers did not plead sufficient facts to allege that their patients had assigned them any rights.  Because we find the non-assignment clause overrides any purported assignment, we decline to review the determination that no patient assignments existed.

Assuming the payment authorizations in *Advanced Women's Health Center* effectuated an assignment of *some* rights, however, does not end the inquiry. "The question of what rights and remedies pass with a given assignment depends upon the intent of the parties." *Pac. Coast Agr. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975). We therefore consider whether the claims the Center advances in this litigation are within the scope of the assignments on which it relies. *See Spinedex*, 770 F.3d at 1292.

Here, the Center seeks injunctive relief to prevent Anthem from offsetting asserted overpayments against other payments due the Center (which for the most part, of course, relate to different patients than the ones to whom the contested services were provided); declaratory relief that Anthem's recoupment efforts are unlawful; monetary damages for benefits allegedly unlawfully recouped; and declaratory and injunctive relief for breach of fiduciary duty. To determine whether the payment authorization forms assigned the Center the right to pursue these claims, we look at the language and context of the authorizations.

Our analysis in *Spinedex*, 770 F.3d at 1292, is instructive. There, health plan subscribers signed forms assigning the provider the right to seek payment of claims directly from health plan administrators. *Id.* In that context, the forms provided, in part, "[t]his is a direct assignment of my rights and benefits under this policy." *Id.* (capitalization removed). Notwithstanding the broad language of the assignment – considerably broader than the language here – the court held that "the entirety of the Assignment indicates that patients intended to assign to [the provider] only their rights to bring

suit for payment of benefits," and that the provider had "no right to bring claims for breach of fiduciary duty." *Id.*

Even more clearly than in *Spinedex*, the language and context of the assignment here indicates the plan subscribers' intended to assign, at most, the right to payment of benefits and the associated right to sue for non-payment.[7]   The authorization is located on a form that lists types of medical services.   The assignment language refers only to direct payment of insurance benefits to the physician, with no reference to any broader rights.   There is no doubt that this authorization does not encompass the Center's claims for declaratory and injunctive relief with regard to offsetting of overpayments against largely unrelated claims, or for breach of fiduciary duty. *See id*.

Nor does the authorization reflect an assignment that encompasses the Center's claims for declaratory relief and money damages regarding recoupment of alleged overpayments.   We have held that "because a health care provider-assignee stands in the shoes of the beneficiary, such a provider has standing to sue under § 502(a)(1)(B) to recover

---

[7] An assignment of the right to receive payment of benefits generally includes the limited right to sue for non-payment under § 502(a)(1)(B), which empowers a participant or beneficiary to bring a civil action "to recover benefits due to her under the terms of the plan." *See Spinedex*, 770 F.3d at 1292, 1297 (recognizing that patients had assigned the health care provider their "rights to bring suit for payment of benefits"); *Misic*, 789 F.2d at 1377–79 (holding that a physician, "as assignee of beneficiaries pursuant to assignments valid under ERISA, has standing to assert the claims of his assignors," and so can sue to recover benefits under § 502(a)(1)(B) of ERISA); *see also BlueCross BlueShield of Tenn.*, 827 F.3d at 547; *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).

benefits due under the plan." *Blue Cross of Cal. v. Anesthesia Care Ass'n*, 187 F.3d 1045, 1051 (9th Cir. 1999). But the Center's claim regarding recoupments is not a suit to recover benefits under the ERISA plans. Rather, the claim relates to Anthem's process of post-payment claims review and practice of recouping erroneous payments. These are claims that the Center's "patient-assignors could not assert," *id.*, as any recoupment would come from Providers not from the patients. *See* n.8, *infra*. The claims therefore do not fall within the scope of the assignment. *See Anesthesia Care Ass'n*, 187 F.3d at 1051. Although a "dispute . . . over the *right* to payment, . . . might be said to depend on the patients' assignments to the Providers," the dispute over recoupment "depends on the terms of the provider agreements," not on the assignment. *Id.*; *see also BlueCross BlueShield of Tenn.*, 827 F.3d at 548–49 (in an analogous case, holding that a health care provider's claims regarding recoupment were "outside the scope of [the provider's] assigned standing," because "the patient-assignors are not party to the Provider Agreement that governs the recoupment process, and [the insurer] has no right to recoup payments for medical care made to its members").

In sum, Providers are not "beneficiaries" expressly authorized to sue to enforce ERISA's provisions, and they cannot bring their claims derivatively as assignees on behalf of plan beneficiaries. Providers therefore are not authorized to bring their claims in federal court under ERISA. Accordingly, we affirm the district courts' dismissals of the

ERISA claims in both *DB Healthcare* and *Advanced Women's Health Center*.[8]

## C.

We caution that our conclusions regarding the reach of ERISA's statutory remedies do not necessarily preclude Providers from contesting the recoupment and offsetting actions they dispute. Claims are preempted by ERISA only if two conditions are met: (1) the litigant could have brought the claim under ERISA's civil enforcement provision, and (2) the claims have no basis in an independent legal duty. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Any state law claims for breach of the provider agreements could not have been brought under ERISA and would have an independent legal basis. Such claims would not be preempted by ERISA. *See Anesthesia Care Ass'n*, 187 F.3d at 1050–52

---

[8] Because we affirm the district courts' decisions on the ground that Providers are not statutorily or contractually authorized to bring suit, we do not consider the merits of Providers' claims that the plan administrators violated the ERISA Claims Procedure regulation. We do note, however, that the regulation applies only to "claims for benefits *by* participants and beneficiaries." *See* 29 C.F.R. § 2560.503-1(a) (emphasis added). That language does not seem to provide procedural protections to health care providers in payment disputes with claims administrators where, as here, those providers have no recourse against the plan subscribers. *See* Dep't of Labor, Employee Benefits Security Administration, *Benefit Claims Procedure Regulation FAQs*, A-8, available at https://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html (last viewed February 21, 2017) ("The regulation does not apply to requests by health care providers for payments due them – rather than due the claimant – in accordance with contractual arrangements between the provider and an insurer or managed care organization, where the provider has no recourse against the claimant for amounts, in whole or in part, not paid by the insurer or managed care organization.").

(holding that because a health care provider's claim that Blue Cross of California improperly amended its schedule of fees was governed by a provider agreement rather than an employee benefit plan, that claim was properly brought in state court and not preempted by ERISA).

### D.

Finally, the district court properly dismissed the Center's claims under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), disapproving Anthem's recoupment program with respect to government employee benefits plans.   The government employee benefits plans are governed by the ACA, not by ERISA.  *See* 29 U.S.C. § 1003(b)(1); 42 U.S.C. § 300gg-21(a)(1).

The Center does not have authority to bring its claims directly under ERISA – because, among other reasons, the government plans are not covered by ERISA § 502(a), and also because the Center is not, in any event, an ERISA beneficiary, *see* Part IIA, *supra*.  For the reasons explained earlier, *see* Part IIB, *supra*, the Center cannot sue derivatively via patient assignment either.   Nor can the Center be considered a "beneficiary" under the government plans themselves, for essentially the same reasons it is not a "beneficiary" under ERISA.  As the Center has not identified any other basis for the claims concerning the government plans, those claims cannot go forward.

### III. Conclusion

For the foregoing reasons we **AFFIRM** the judgments of the district courts in *Advanced Women's Health Center* and *DB Healthcare*.