[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10459

_____

D.C. Docket No. 1:14-cv-24098-UU

GABLES INSURANCE RECOVERY, INC.,
as assignee of South Miami Chiropractic LLC,

Plaintiff - Appellant,

versus

BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 1, 2015)

Before MARCUS and JILL PRYOR, Circuit Judges and RESTANI,[*] Judge.

PER CURIAM:

Gables Insurance Recovery, Inc. ("Gables") appeals the district court's omnibus order denying its motion to remand and granting Blue Cross and Blue Shield of Florida, Inc.'s ("Florida Blue") motion to dismiss.  The district court held that because the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), completely preempts Gables's claims, the court had subject matter jurisdiction.  The district court then dismissed Gables's claims without prejudice for failure to exhaust ERISA administrative remedies.  Gables argues on appeal that the district court erred in determining there was complete preemption.  After careful consideration and with the benefit of oral argument, we conclude that the district court had subject matter jurisdiction, and we affirm the district court's judgment.

I.

This case arises out of a dispute between a healthcare provider, South Miami Chiropractic, LLC, and an insurer, Florida Blue.  South Miami Chiropractic provided services to an insured under a Florida Blue health insurance plan.  The terms of Florida Blue's insurance contract with its insured govern its payment to medical providers for services they provide to its insureds.  When South Miami

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Chiropractic sought payment from Florida Blue, the insurer failed to pay. South Miami Chiropractic then assigned its right to payment to Gables, which sought to collect from Florida Blue.

Gables sued Florida Blue in state court, alleging six causes of action. The complaint began by reciting the "facts common to all causes of action." Compl. ¶¶ 1-13 (Doc. 1-2).[1] As pled, the case arose out of Florida Blue's breach of its common law duties under the health insurance contract with its insured, as well as other express and implied agreements between South Miami Chiropractic and Florida Blue. Gables maintained that it could pursue its claims both as the "successor in interest to the rights of the medical provider as an intended third party beneficiary of the pertinent health insurance contract" and also based on agreements directly between South Miami Chiropractic and Florida Blue. *Id.* ¶ 4. Gables expressly disclaimed that it was seeking relief under ERISA, asserting that it was "bring[ing] this action based on state claims only." *Id.* ¶ 6.

Counts I and III of the complaint were essentially the same; they alleged a breach of contract based on Florida Blue's failure to pay South Miami Chiropractic under the health insurance plan. Gables alleged that Florida Blue had issued a health insurance policy to its insured and agreed to pay providers, like South Miami Chiropractic, for services rendered to the insured. Based on this obligation,

---

[1] Citations to "Doc." refer to docket entries in the district court record in this case.

Gables alleged, South Miami Chiropractic was an "intended third party beneficiary of the health insurance contract between [Florida Blue] and the patient/insured." *Id.* ¶ 17; *see also id.* ¶¶ 41, 47. Gables also alleged that at the time South Miami Chiropractic provided the services, the insured was covered by "the insurance contract between the insured[] and [Florida Blue]" and that South Miami Chiropractic obtained all necessary authorizations from Florida Blue before treating the insured. *Id.* ¶¶ 19-20; *see also id.* ¶¶ 41-43. After Florida Blue allegedly failed to pay according to the insurance policy, Gables sought in Counts I and III to recover as assignee of South Miami Chiropractic's third party beneficiary rights.

In Count II, Gables alleged that Florida Blue breached an oral contract with South Miami Chiropractic. This count, pled in the alternative, incorporated by reference the facts common to all causes of action and several facts alleged in Count I. The allegations incorporated by reference included that South Miami Chiropractic was a third party beneficiary of the health insurance contract between Florida Blue and the insured and also that the insured was eligible for benefits under the insurance contract. Gables further alleged that South Miami Chiropractic contacted Florida Blue to confirm coverage "under the subject health care plan" and that Florida Blue agreed to pay South Miami Chiropractic for services provided to the insured because the insured "was covered under the health

care plan." *Id.* ¶¶ 31-32.  Gables claimed that Florida Blue's failure to pay breached the oral contract created during that communication.

Gables's remaining claims for quantum meruit, open account, and account stated incorporated by reference its allegations in Counts I, II, and III that Florida Blue failed to pay amounts owed pursuant to its health insurance contract with the insured and that, during communications confirming coverage, Florida Blue orally agreed that there was coverage under the health insurance policy and thus it would pay for service.

Florida Blue removed this action to federal court based on federal question jurisdiction, claiming that ERISA governed the claims and completely preempted Gables's complaint.  After removal, Florida Blue moved to dismiss the complaint, contending that South Miami Chiropractic had failed to exhaust its administrative remedies as mandated under ERISA.  Gables opposed the motion to dismiss and moved to remand the case to state court.  The district court granted Florida Blue's motion to dismiss, denied Gables's motion to remand, and dismissed the action without prejudice.  Although Gables brought only state law claims, the district court held that ERISA complete preemption applied and therefore federal question jurisdiction existed.  The court also found that Gables had failed to exhaust administrative remedies.  This appeal followed.

II.

On appeal, Gables argues that the district court erred in determining that there was complete preemption and thus federal question jurisdiction. Gables does not challenge the district court's finding that it failed to exhaust administrative remedies. Thus, we consider only whether Gables's causes of action were completely preempted. "We review *de novo* denials of motions to remand as well as preemption determinations." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009).

Generally, a complaint alleging only state law claims is not removable to federal court based on federal subject matter jurisdiction. *Id.* "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Id.* We have recognized that "[c]omplete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim." *Id.*

There is no dispute in this case that Gables pled only state law causes of action.[2] The question before us is whether these state law claims are completely

---

[2] We are not bound by the labels used in the complaint or Gables's disclaimer that ERISA does not govern its claims. "[M]erely referring to labels affixed to claims to distinguish between preempted and non-preempted claims is not helpful because doing so would elevate form over

6

preempted by section 502(a) of ERISA.  Section 502(a) creates a private right of action for a plan participant or beneficiary to recover benefits due under the terms of a health insurance plan.  29 U.S.C. § 1132(a).  This section "has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' "  *Conn. State*, 591 F.3d at 1344 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  Thus, even though pled as state common law claims, if Gables's "causes of action [are] within the scope of the civil enforcement provisions of § 502(a)[,] [they are] removable to federal court."  *Taylor*, 481 U.S. at 66.

To determine whether a cause of action is within the scope of section 502(a), we apply the two-part test established in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  We ask "(1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim."  *Conn. State*, 591 F.3d at 1345.  If we answer these two questions in the affirmative, the claim is completely preempted.  In this case, we consider the two parts of the *Davila* test in reverse order.

---

substance and allow parties to evade the pre-emptive scope of ERISA." *Conn. State*, 591 F.3d at 1350 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)) (internal quotation marks omitted).

A.

Gables argues that its claims arise out of a separate duty independent of the ERISA plan; in other words, they do not depend on whether Florida Blue has a duty to pay for services under the ERISA plan.  We disagree.

Gables essentially brought two types of claims.  In Counts I and III, Gables asserted third party beneficiary claims based on a breach of the underlying ERISA plan.  In Counts II, IV, V, and VI, Gables alleged contractual or quasi-contractual claims that purportedly are based on Florida Blue's oral agreements to cover the services rendered.  Neither set of claims arises out of a separate duty independent of the ERISA plan.

Because Gables's third party beneficiary claims necessarily depend upon a breach of the ERISA plan, they do not arise out of a separate duty independent of the plan.  Under Florida law, to succeed as a third party beneficiary on a breach of contract claim, the plaintiff must prove "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach."  *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 195 (Fla. 2006) (internal quotation marks omitted).  Thus, a necessary element of a third party beneficiary claim is a breach of the underlying contract.  Absent a wrongful denial of benefits under the ERISA

8

plan—the contract—Gables cannot succeed on a third party beneficiary breach of contract claim. Counts I and III do not arise out of a duty independent of the ERISA plan.

Gables's claims based on the alleged oral agreement confirming coverage also are not based upon a legal duty independent of the ERISA plan. In Counts II, IV, V, and VI, Gables incorporated its general allegations that the insured was eligible for benefits under the health insurance contract and that Florida Blue breached its common law duties under that contract. Gables then specifically alleged that its remaining claims arose when South Miami Chiropractic contacted Florida Blue "to confirm coverage of the patient and for the subject services under the subject health care plan," and Florida Blue agreed "that the patient was covered under the health care plan." Compl. ¶¶ 31-32; *see also id.* ¶¶ 49, 58, 65 (incorporating ¶¶ 31-32). Thus, the complaint expressly tethers Florida Blue's preauthorization to its obligations under the ERISA insurance plan. Aside from the allegation that Florida Blue confirmed coverage under the plan, Gables pled no specific facts to support a contractual or quasi-contractual duty owed to South Miami Chiropractic. As pled, Counts II, IV, V, and VI are supported by no other legal duty; therefore, the second part of the *Davila* test is satisfied.

B.

9

Returning to the first part of the *Davila* test, whether Gables could have brought its claim under section 502(a) of ERISA, we must consider whether Gables's claims fall within the scope of ERISA and also whether Gables has standing to sue under ERISA. *Conn. State*, 591 F.3d at 1350. First, we readily conclude that Gables's claims fall within ERISA's scope. In *Davila*, the Supreme Court held that a claim alleging a wrongful denial of coverage under the terms of an ERISA-regulated employee benefits plan falls within the scope of ERISA. 542 U.S. at 214. And, as explained above, despite Gables's efforts to distance its claims from the ERISA plan, each count is based expressly on Florida Blue's alleged breach of the ERISA-regulated employee health benefits plan—that is, an alleged wrongful denial of coverage under the plan.

Second, Gables has standing to sue under ERISA. To maintain an action under ERISA, a plaintiff must have statutory standing, meaning the plaintiff has the right to make a claim under section 502(a). *See Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004). Aside from the Secretary of Labor, ERISA permits only two categories of persons to sue for benefits: plan beneficiaries and plan participants. 29 U.S.C. § 1132(a)(1)(B). "Healthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA." *Physicians Multispecialty Grp.*, 371 F.3d at 1294.

10

There is, however, an exception to this general rule. "[A] healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." *Conn. State*, 591 F.3d at 1347. We announced this rule in *Cagle v. Bruner*, explaining that nothing in ERISA prohibits a healthcare provider from acquiring "derivative standing based upon an assignment of rights" from a participant or beneficiary. 112 F.3d 1510, 1515 (11th Cir. 1997). We recognized that "the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans" because the providers "are better situated and financed to pursue an action for benefits owed for their services." *Id.* (internal quotation marks omitted).

Gables readily admits that a provider-assignee would have standing to sue under the ERISA plan for purposes of complete preemption, but it argues that it lacks standing under ERISA because it is a sub-assignee and not the healthcare provider. We have never drawn the line Gables urges us to draw and decline to do so now. Limiting derivative standing to assignee healthcare providers is inconsistent with the reasoning underlying our decision in *Cagle*. Just as nothing in ERISA's statutory language prohibits healthcare providers from obtaining derivative standing through assignment, nothing in the statutory language prohibits non-healthcare providers from obtaining derivative standing through a sub-

11

assignment.  *See Cagle*, 112 F.3d at 1515; *see also Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003) (explaining that no language in ERISA "even remotely suggests that such assignments are proscribed or ought in any way to be limited" (internal quotation marks omitted)).  Moreover, "allowing the health care provider to use an assignee to recover ERISA benefits does nothing to frustrate the goals or purposes of ERISA." *Tango Transp.*, 322 F.3d at 893.  To the contrary, allowing a provider to assign the right to bring suit may protect plan participants by transferring the burden of bringing suit from healthcare providers who may be unable to collect on denied claims unless they outsource the collection effort to a third party.  Accordingly, consistent with decisions of some of our sister circuits, we conclude that Gables has derivative standing as an assignee.  *See id.*; *see also Mut. Life Ins. Co. of N.Y. v. Yampol*, 840 F.2d 421, 427 (7th Cir. 1988) (holding that an insurance company assignee of a fiduciary of an ERISA trust has standing to sue under 29 U.S.C. § 1132(a)(2)); *Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 571 (4th Cir. 2008) ("[I]t may be that in the proper case assignees other than health care providers have derivative standing under ERISA.").

    We acknowledge that, in a series of cases involving one litigious plaintiff, other circuits have held that derivative standing is limited to "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon*

12

*v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001); *accord Simon v. Cyprus Amax Minerals Health Care Plan*, 12 F. App'x 839, 841 (10th Cir. 2001); *Simon v. Belwith Int'l, Inc.*, 3 F. App'x 363, 364-65 (6th Cir. 2001); *Simon v. Value Behav. Health, Inc.*, 208 F.3d 1073, 1081-82 (9th Cir. 2000), *overruled in part on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007); *see also Simon v. Allstate Emp. Grp. Med. Plan*, 263 F.3d 656, 658-59 (7th Cir. 2001) (affirming dismissal on res judicata grounds but noting that other circuits have rejected the plaintiff's assertion of derivative standing because he was not a health care provider).  In each of these cases, Stephen Simon alleged that an insured assigned benefits claims to the healthcare provider, which in turn reassigned the benefits claims to Mr. Simon.  Mr. Simon then repeatedly filed claims against the insurer that suffered from a variety of legal defects.  *See Allstate*, 263 F.3d at 659

The Ninth Circuit explained in *Simon v. Value Behavioral Health, Inc.* that it limited derivative standing to health care providers to avoid "transforming health benefit claims into a freely tradable commodity."  208 F.3d at 1081.  The Ninth Circuit expressed concern that recognizing derivative standing beyond the health care provider "could lead to endless reassignment of claims[] and . . . would allow third parties with no relationship to the beneficiary to acquire claims solely for the purpose of litigating them."  *Id.*  We do not share this concern in this case.  As we recognized in *Cagle*, allowing assignments for the purposes of bringing suit

13

generally "facilitates rather than hampers the employee's receipt of health benefits" because the assignee likely is better positioned to pursue an action for benefits.  *Cagle*, 112 F.3d at 1515 (quoting *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229, 230 (5th Cir. 2012)(en banc)).  And, like the Fifth Circuit in *Tango Tranport*, "[w]e need not reach whether *all* assignees or sub-assignees of plan participants have standing to sue."  *Tango Tranpsort*, 322 F.3d at 894.  Today, we decide only that Gables has standing to sue under the ERISA plan as a sub-assignee of the plan participant.[3]

## III.

Because both parts of the *Davila* test are satisfied, we hold that Gables's claims are completely preempted.  Accordingly, the district court properly exercised jurisdiction over Gables's complaint on removal from state court and denied Gables's motion to remand.

**AFFIRMED.**

---

[3] Gables also argues that the scope of the assignment from South Miami Chiropractic to Gables is limited, excluding claims for payment under the ERISA plan, and thus it lacks standing as an assignee.  Gables's own allegations belie this argument.  Gables pled that South Miami Chiropractic assigned to Gables its "rights and all available causes of action associated with those rights, to collect benefits under [the health insurance] claim."  Compl. ¶ 25.  The alleged assignment plainly includes South Miami Chiropractic's right to payment under the ERISA plan, and the "assignment of the right to payment is enough to create standing."  *Conn. State*, 591 F.3d at 1352.

14