**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| BRISTOL SL HOLDINGS, INC., a California corporation, in its capacity as the owner of the claims for Sure Haven, Inc., a California corporation, *Plaintiff-Appellant*, | No. 20-56122 <br><br> D.C. No. 8:19-cv-00709-PSG-ADS |
| v. | OPINION |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation; CIGNA BEHAVIORAL HEALTH, INC., a Connecticut corporation, *Defendants-Appellees.* |  |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted October 20, 2021
Pasadena, California

Filed January 14, 2022

Before: Andrew J. Kleinfeld, Ryan D. Nelson, and
Lawrence J. VanDyke, Circuit Judges.

Opinion by Judge VanDyke

# SUMMARY[*]

## ERISA

The panel reversed the district court's judgment in favor of Cigna Health and Life Insurance Company in an ERISA action brought by Bristol SL Holdings, Inc., and remanded.

Through a bankruptcy proceeding, Bristol became the successor-in-interest to Sure Haven, which serviced patients insured by Cigna. Bristol alleged that Cigna violated ERISA and state law by denying Sure Haven's claims for reimbursement for services provided. The district court dismissed Bristol's ERISA claim, as an assignee of a healthcare provider, for lack of derivative standing, or lack of authority to bring a claim under ERISA.

The panel held that, under ERISA, a non-participant health provider cannot bring claims for benefits on its own behalf, but must do so derivatively, relying on its patients' assignments of their benefits claims. Agreeing with other circuits, the panel held that other assignees also may have derivative standing if extending standing would align with the goal of ERISA. The panel distinguished *Simon v. Value Behav. Health, Inc.*, which denied derivative standing to a lawyer who had acquired over 600 benefit claims assigned to him by numerous mental-health facilities, which in turn had been assigned those claims by hundreds of patients, because expanding derivative standing to such a person would be tantamount to transforming health benefit claims into a freely tradable commodity. The panel concluded that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

many of the concerns about commodifying health benefit claims, prevalent throughout *Simon*, were absent here. In addition, refusing to allow derivative standing for Bristol would create serious perverse incentives that would undermine the goal of ERISA. The panel held that the first assignee as a successor-in-interest through bankruptcy proceedings who owns all of one healthcare provider's health benefit claims has derivative standing under ERISA.

The panel addressed other claims in a separate memorandum disposition filed simultaneously with this opinion.

## COUNSEL

Dorothy F. Easley (argued), Easley Appellate Practice PLLC, Miami, Florida; Matt Lavin and Aaron Modiano, Arnall Golden Gregory LLP, Washington, D.C.; John W. Tower, Law Office of John W. Tower, Encinitas, California; for Plaintiff-Appellant.

William P. Donovan Jr. (argued), McDermott Will & Emery LLP, Los Angeles, California, for Defendants-Appellees.

**OPINION**

VANDYKE, Circuit Judge:

## I.  INTRODUCTION

At issue is a dispute between a healthcare treatment center (Sure Haven, and Bristol as its assignee) and an insurance company (Cigna) over approximately $8.6 million worth of services that Sure Haven provided to Cigna's insureds.  The crux of the disagreement is whether Sure Haven entered into an enforceable agreement with Cigna to treat patients covered by Cigna through a series of "verification" and "authorization" phone calls that Sure Haven claims it relied on in providing the medical services.

## II.  BACKGROUND

### A.  Factual Background

Sure Haven was an accredited mental-health and substance-abuse treatment center that regularly serviced patients insured by Cigna.  According to Bristol, Sure Haven went out of business and was forced into bankruptcy when Cigna abruptly stopped reimbursing for services provided, ultimately refusing to pay Sure Haven for services it rendered to 106 Cigna-insured patients.  Bristol became the successor-in-interest to Sure Haven through a bankruptcy proceeding.

Sure Haven was an out-of-network provider for Cigna, which meant that the two parties did not have a standing contract governing medical rates and coverage.  Sure Haven would therefore regularly call Cigna to verify coverage and get approval for various services before performing treatment.  This process included at least one verification call

and authorization call per covered patient. The verification call served to ensure at the outset that the patient's insurance was active and included out-of-network services. Once verified, Sure Haven would make authorization calls before providing specific services to the patients to ensure that Cigna would approve the service. During the period at issue here, Sure Haven made 106 verification calls (one for each patient) and 706 authorization calls to Cigna.

The parties heavily dispute what these calls included and established. According to Bristol, Sure Haven's verification calls with Cigna included establishing a percentage reimbursement of the "usual, customary, and reasonable rate" (UCR), which means the percentage of costs that Cigna would cover for a given patient's services. Cigna would give varying percentages of UCR for each of the 106 patients. After the UCR percentage was established, Sure Haven would make follow-up authorization calls to Cigna for pre-approval of specific services. When Cigna permitted a service, it would give a "unique 'authorization number'" to confirm prior approval when Sure Haven billed for that provided service. The parties continued this practice for almost a year, with Sure Haven providing reimbursable services worth over $8.6 million to Cigna insured patients, which Cigna stopped reimbursing. Bristol alleges that Cigna continued authorizing treatment during this time despite deciding internally not to pay these claims.

Cigna tells a different story. According to Cigna, the verification calls established only that the insured had out-of-network benefits and other related information (e.g., deductibles, out-of-pocket maximums, etc.). For out-of-network providers, payment could not be determined until after the claim was received, reviewed, and justified. And contrary to Bristol's claims, nowhere in this process were

UCRs discussed, nor did any Cigna representative promise to pay a percentage of the UCR.  Moreover, Cigna claims that nearly all the verification and authorization calls were automatically routed to hear certain disclaimers before any subsequent conversation.  For the authorization calls, Cigna insists the following would play:

> Please be aware, pre-approval is not a guarantee of coverage.  Coverage and covered services are contingent upon the patient's eligibility on the date(s) services are rendered and the patient's covered services plans and policies.  Coverage and covered services also may be dependent on your CIGNA HealthCare network participation. If you are not a participating provider in the plan's network, out-of-network covered services may apply.

A similar warning that the information given in a verification call "does not guarantee coverage or payment" also played automatically.

Regarding the stoppage of payments, Cigna maintains that it began denying all of Bristol's claims because Sure Haven was violating the benefit plan's requirement by not collecting the portion of the payment due from the members themselves in addition to collecting the portion due from Cigna.  After it purchased all Sure Haven's claims against Cigna in Sure Haven's bankruptcy proceeding, Bristol sued Cigna as Sure Haven's assignee.

## B.  Procedural History

The litigation below progressed over a series of amended complaints by Bristol, with the district court eventually

ruling for Cigna on all claims. Bristol's first complaint was filed in April of 2019, and asserted twelve causes of action, which Cigna moved to dismiss. The court ruled for Cigna, and granted Bristol leave to amend. In October of 2019, Bristol filed its first amended complaint, which added an Employee Retirement Income Security Act of 1974 (ERISA) claim and had ten state law claims. Most relevant for our purposes here was the district court's dismissal of the ERISA claim with prejudice. The district court ruled that Bristol lacked standing to bring a claim under ERISA because neither ERISA's text nor this circuit's case law granted standing to an assignee of a healthcare provider.[1]

After further evidentiary and merits proceedings in the litigation that are not relevant here, Cigna eventually moved for summary judgment on the remaining claims in Bristol's second amended complaint, which the district court granted. With final judgment rendered, Bristol brought this appeal.[2]

---

[1] While the district court ruling and much of our circuit's case law refers to this as a question of standing, it is arguably better understood as a question of whether ERISA authorizes a cause of action for the party. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 873–74 (9th Cir. 2017) (explaining the distinction).

[2] In addition to derivative standing under ERISA, Bristol appeals numerous other claims raised below. Those claims are addressed in a separate memorandum disposition filed simultaneously with this opinion. That disposition reverses the district court's summary judgment ruling for Cigna on Bristol's breach of contract and promissory estoppel claims, and affirms the district court's dismissal of Bristol's fraudulent inducement claim and its denial of Bristol's motion for leave to amend the complaint.

### III. ANALYSIS

We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the district court's dismissal for failure to state a claim. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 873 n.5 (9th Cir. 2017).

The text of ERISA authorizes "a participant or beneficiary" of an ERISA plan to bring a civil action.[3]  *See* 29 U.S.C. § 1132(a)(1)(B).  Circuit case law has made clear that healthcare providers are not "beneficiaries" within the meaning of ERISA.  *See DB Healthcare, LLC*, 852 F.3d at 874.  Therefore, "a non-participant health care provider . . . cannot bring claims for benefits on its own behalf.  It must do so derivatively, relying on its patients' assignments of their benefits claims."  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014).

It is well-established that assignees are generally allowed to bring suit on behalf of the assignor.  *See Sprint Commc'ns Co., L.P. v. APCC Servs.*, 554 U.S. 269, 275 (2008) ("[H]istory and precedent are clear on the question before us: Assignees of a claim, including assignees for collection, have long been permitted to bring suit.").  This general principle extends into the ERISA context.  *See Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 (9th Cir. 1986); *Spinedex*, 770 F.3d at 1288.

But there are certain limits to such derivative standing for assignees bringing ERISA claims.  Most prominently,

---

[3] ERISA also allows the Secretary of Labor, a State, or employer to bring a civil action under certain circumstances not relevant here. *See* 29 U.S.C. § 1132(a).

our circuit denied derivative standing to Stephen Simon, a lawyer who had acquired over 600 benefit claims assigned to him by numerous mental-health facilities, who in turn had been assigned those claims by hundreds of patients. *See Simon v. Value Behav. Health, Inc.*, 208 F.3d 1073, 1080 (9th Cir. 2000), *amended by* 234 F.3d 428 (9th Cir. 2000), and *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007). The panel in *Simon* explained that we had previously only extended derivative standing to "health care providers to whom beneficiaries had assigned their benefit claims after receiving medical care from such providers." *Id.* at 1081. Granting standing to these healthcare providers furthered the congressional purposes behind ERISA because it enhanced the efficiency and ease of billing among all the interested parties. *See id.*

But the *Simon* panel worried that expanding derivative standing to someone like Simon would

> be tantamount to transforming health benefit claims into a freely tradable commodity. It could lead to endless reassignment of claims, and it would allow third parties with no relationship to the beneficiary to acquire claims solely for the purpose of litigating them.

*Id.* Presented with the request to extend standing to Simon, the court concluded, "[w]e do not see how such a result would further ERISA's purpose." *Id.*

Looking beyond the nuanced rationale given in *Simon* for refusing to extend derivative standing in that case, the district court here read *Simon* to stand for the general proposition that "[t]he Ninth Circuit has declined to extend this derivative standing to assignees of health care

providers"—period.  Because Bristol is "an assignee of the health care provider," the district court concluded that it lacked derivative standing.

But a closer reading of the case law shows that much of the reasoning applied to Simon is inapplicable to Bristol. First, Simon was an attorney who aggregated hundreds of unrelated claims from numerous different health facilities, akin to a bill-collector.  *See id.* at 1080.  Here, Bristol is the successor-in-interest to Sure Haven through bankruptcy proceedings and is only bringing claims that belonged to one health care provider (Sure Haven), which were all denied for the same reason.  Second, Simon filed lawsuits across the nation against approximately 1,600 defendants, many of which were blatantly defective.  *See id.*; *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1339–40 (11th Cir. 2015) (collecting examples of Simon's litigation).  Bristol's claims are much more focused and specific.  Third, Simon had no relationship to the ultimate beneficiaries, and acquired these claims for the sole purpose of litigation.  Bristol, on the other hand, is the bankruptcy successor-in-interest to Sure Haven. Together, these considerations demonstrate that many of the concerns about commodifying health benefit claims—which were prevalent throughout *Simon*—are absent here.

Moreover, Bristol's claim to bring a cause of action under ERISA already fits comfortably within our circuit's existing case law.  When evaluating causes of action under ERISA, our court has examined whether extending standing would align with the "general goal of ERISA."  *Misic*, 789 F.2d at 1377.  Refusing to allow derivative standing in this unique circumstance would create serious perverse incentives that would undermine the goal of ERISA. Without the type of derivative standing claimed by Bristol in

this case, Cigna could force healthcare providers like Sure Haven into bankruptcy, thereby ensuring that it would likely *never* have to pay for the services it authorized. Against such a harsh legal backdrop, future providers like Sure Haven would be forced to require patients to foot the entire bill up front (which many would be unable to do), and then make those patients seek reimbursement from the insurer for its share. Our court has already recognized this concern when it allowed derivative standing for healthcare providers. "Such assignments also protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." *Misic*, 789 F.2d at 1377.

This conclusion also finds support in other circuits, many of which have extended derivative standing in similar circumstances—where the *Simon* concerns were less manifest. *See, e.g.*, *Brown v. Sikora & Assocs., Inc.*, 311 Fed. App'x 568, 570 (4th Cir. 2008) (unpublished) (collecting cases) ("[O]ur sister circuits have consistently recognized [derivative] standing when based on the valid assignment of ERISA health and welfare benefits by participants and beneficiaries."). For example, the Eleventh Circuit extended derivative standing to an assignee of a medical provider after explicitly distinguishing that case from *Simon*. *See Gables*, 813 F.3d at 1340. The Fifth Circuit similarly granted standing to an assignee of a health plan provider. *See Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 889 (5th Cir. 2003).

Both the Eleventh and Fifth Circuit cases are consistent with *Simon*'s rationale. As discussed above, our court in *Simon* distinguished derivative standing for healthcare

providers because doing so furthered ERISA's purpose, while derivative standing for an attorney aggregating wholly unrelated claims frustrated ERISA's purpose. The Fifth Circuit—echoing our court in *Misic*—explained at length how derivative standing for assignees of healthcare providers in a context like this furthers the purpose of ERISA, stating:

> [D]enying derivative standing to health care providers would harm participants or beneficiaries because it would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them up-front. Likewise, granting derivative standing to the assignees of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front. Conversely, to bar health care providers from assigning their rights under ERISA, and shifting the risk of non-payment to a third-party, would chill health care providers' willingness to accept a patient. Third parties . . . will only be willing to purchase an assignment from a health care provider if they can be assured that they will be afforded standing to sue for reimbursement.

*Tango*, 322 F.3d at 894 (internal quotation marks and citations omitted).

Admittedly, some of the other circuits' cases can be read as extending derivative standing beyond what our court in *Misic* and *Simon* may have anticipated. But it is clear the

district court overextended *Simon*'s holding to reject derivative standing for any and every assignee other than a health care provider, no matter how differently situated that assignee may be from Simon himself.  Therefore we conclude, similar to what other circuits have done, that Bristol has derivative standing under the facts of this case. In holding that Bristol has derivative standing under ERISA here, we need not decide every possible variation under which an assignee would (or would not) have an ERISA cause of action.  *See Tango*, 322 F.3d at 894; *Gables*, 813 F.3d at 1340.  Our ruling today is a modest one: We hold only that the first assignee as a successor-in-interest through bankruptcy proceedings who owns all of one healthcare provider's health benefit claims has derivative standing. Granting Bristol standing here is consistent with *Misic*, is not inconsistent with *Simon*, and furthers the purpose of ERISA.

## IV.  CONCLUSION

For the reasons stated herein, we hold that Bristol is entitled to derivative standing under ERISA.  Therefore, the district court's ruling on the matter is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.