**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SOUTH COAST SPECIALTY
SURGERY CENTER, INC.,

                *Plaintiff-Appellant*,

  v.

BLUE CROSS OF CALIFORNIA,
DBA Anthem Blue Cross,

                *Defendant-Appellee*.

No.22-55717

D.C. No.
8:21-cv-01944-
TJH-KES

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Argued and Submitted October 3, 2023
Pasadena, California

Filed January 10, 2024

Before:  Susan P. Graber, Salvador Mendoza, Jr., and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Mendoza

# SUMMARY[*]

## ERISA

The panel reversed the district court's dismissal of an ERISA action brought by South Coast Specialty Surgery Center, Inc., and remanded.

South Coast, a healthcare provider, sought reimbursement from Blue Cross of California, d/b/a Anthem Blue Cross, an insurer and claims administrator, for the costs of medical services provided to South Coast's patients. South Coast, neither a plan participant nor a beneficiary, could not bring a direct enforcement action under ERISA, but it argued that it could enforce ERISA's protections directly because its patients assigned it the right to sue for the non-payment of plan benefits via an "Assignment of Benefits" form.

The panel held that, under longstanding precedent, a healthcare provider has derivative authority to enforce ERISA's protections if it has received a valid assignment of rights. Construing South Coast's "Assignment of Benefits" form, the panel held that South Coast's patients effectuated a valid assignment. Accordingly, South Coast had the right to seek payment of benefits and to sue for non-payment.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mina Hakakian (argued), Williams Wollitz Hakakian PC, Los Angeles, California; Steven M. Goldberg, David S. Markun, and Kevan T. Hunt, Markun Zusman & Compton LLP, Encino, California; for Plaintiff-Appellant.

David J. de Jesus (argued), Reed Smith LLP, San Francisco, California; Amir Shlesinger and Avraham E. Aizenman, Reed Smith LLP, Los Angeles, California; for Defendant-Appellee.

**OPINION**

MENDOZA, Circuit Judge:

Plaintiff-appellant South Coast Specialty Surgery Center, Inc. ("South Coast") filed suit against defendant-appellee Blue Cross of California, d/b/a Anthem Blue Cross ("Anthem") under section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") for Anthem's alleged failure to fully reimburse the costs of medical services provided to South Coast's patients. Unlike its patients, South Coast cannot bring a direct enforcement action under ERISA; it is neither a plan participant nor a beneficiary within the meaning of that statute's civil enforcement provision. But South Coast argues that it may enforce ERISA's protections derivatively because its patients validly assigned it the right to sue for the non-payment of plan benefits via an "Assignment of Benefits" form. The district court disagreed, concluding that South Coast lacked authority to bring an ERISA claim and

dismissing the healthcare provider's suit.   South Coast's appeal thus raises two questions.   *First*, does a healthcare provider have derivative authority to enforce ERISA's protections if it has received a valid assignment of rights? And *second*, did South Coast's patients effectuate such an assignment, permitting the medical provider to sue Anthem under ERISA?  Longstanding precedent answers "yes" to the first question.    And after construing South Coast's "Assignment of Benefits" form, we answer "yes" to the second.  So we conclude that South Coast has authority to enforce ERISA's protections in federal court, reverse, and remand.

## I.   Procedural and Factual Background

South Coast operates an ambulatory surgery center, where it provides medical services to patients, some of whom are insured under ERISA-governed health benefits plans.  As a condition of treatment, South Coast requires its patients to sign an "Assignment of Benefits" form.  That form states:

Assignment of Benefits

I hereby authorize my Insurance Company to pay by check made payable and mailed directly to: [South Coast] for the medical and surgical benefits allowable, and otherwise payable to me under my current insurance policy, as payment toward the total charges for the services rendered.  I understand that as a courtesy to me, the South Coast Specialty Surgery Center will file a claim with my insurance company on my behalf.  However, I am financially responsible for, and hereby

> do agree to pay, in a current manner, any charges not covered by the insurance payment. If it is necessary to file a formal collection action, I agree to pay all costs, including reasonable attorney's fees incurred by the outpatient medical center in the collection of the outstanding fees.
>
> Actual Plan Benefits cannot be determined until the claim is received by your insurance company and is based upon their determination of medical necessity. The information received from the above stated is not a guarantee of payment.[1]

Per the terms of that assignment, South Coast submits claims to its patients' insurance companies and claim administrators, seeking payment of insurance benefits to cover the costs of its medical services.

According to South Coast, Blue Cross of California, d/b/a Anthem Blue Cross[2] is just such an insurer and claims administrator. Anthem, through a wide network of entities and affiliates, serves approximately 41 million medical member-insureds through its affiliated health plans. Relevant here, Anthem provides coverage under ERISA-governed insurance plans to many South Coast patients. Through its Blue Card Program, Anthem also administers

---

[1] South Coast uses a substantially identical "Assignment of Benefits" form with respect to anesthesia services. But it is unclear whether South Coast also seeks reimbursement from Anthem under that assignment.

[2] This entity is one of the many entities apparently associated with parent company, Anthem, Inc., and which we call "Anthem" for purposes of this appeal.

plans and oversees and adjusts claims for South Coast's patients under ERISA-governed health plans. Since 2012, South Coast has submitted hundreds of claims on behalf of its patients to Anthem.

Until relatively recently, Anthem processed and paid those claims without dispute. But in 2019, Anthem formally instituted a "pre-payment review" process, which significantly curtailed its coverage for the costs of South Coast's procedures. According to South Coast, Anthem (1) ignored ERISA-governed insurance plan documents and benefits coverage requirements, implementing its own "Local Plan Pricing" to determine appropriate medical costs; (2) began requiring "full medical records" to evaluate the "appropriateness," "accuracy," and "correctness" of submitted claims; and (3) started rejecting South Coast's submitted claims without proper reference to the terms and conditions of the controlling ERISA plan. In sum, South Coast maintains that Anthem failed to follow ERISA plan requirements and failed to provide appropriate benefits for approximately 150 medical claims, resulting in a potential shortfall exceeding $5.4 million.

So South Coast sued Anthem under section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B), alleging that Anthem "failed to follow [p]lan terms and conditions with respect to the processing and payment of [submitted] claims." Recognizing that healthcare providers generally lack direct authority to sue under ERISA, South Coast asserts that its "Assignment of Benefits" form, signed by its patients, gives South Coast both the right to seek payment of these benefits and to sue for non-payment. The district court disagreed. Granting with prejudice Anthem's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the district court reasoned that (1) South Coast's "Assignment

of Benefits" form conveyed only "the right to receive direct payment from Anthem," and not the right to sue for non-payment of plan benefits; and (2) under our precedent, South Coast lacked authority to sue under ERISA.  This timely appeal followed.

## II.  Standard of Review

Some ERISA cases raise Article III standing issues, and we examine whether the plaintiff has suffered a cognizable injury, redressable by a court.  *See, e.g.*, *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) (addressing whether plaintiff suffered "'injury in fact' necessary for Article III standing" to assert ERISA claims).  When a plaintiff has Article III standing, a defendant may challenge the authority of the plaintiff to sue under ERISA, and we examine "whether Congress has granted a private right of action to a particular plaintiff[.]"  *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 873 (9th Cir. 2017).  Notably, we formerly characterized whether a plaintiff may sue under ERISA as a "standing" inquiry.  *See, e.g.*, *Harris v. Amgen, Inc.*, 573 F.3d 728, 732 (9th Cir. 2009) (examining whether a plaintiff had "standing under ERISA"); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1477 (9th Cir. 1991) ("Under ERISA, a beneficiary has standing to bring a civil action for non-payment.").  But that label is a "misnomer" when considering whether Congress has authorized a plaintiff to bring suit.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–27 (2014) (quoting *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675–76 (D.C. Cir. 2013) (Silberman, J., concurring)).  "For clarity on this point, we avoid in this opinion references to [South Coast's] 'standing.'"  *DB Healthcare*, 852 F.3d at 873.

The district court here ruled that South Coast lacked authority under ERISA to file suit seeking to recover payments due for services rendered.  We see no Article III concerns in South Coast's suit, and none are raised by the parties, so we cabin our analysis to South Coast's authority to sue under ERISA.  Whether the district court dismissed South Coast's complaint under Rule 12(b)(1) or Rule 12(b)(6), we have jurisdiction under 28 U.S.C. § 1291, and we review the district court's dismissal order de novo. *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

## III. Discussion

### A.

The Employee Retirement Income Security Act of 1974 sets minimum standards for most voluntarily established retirement and health plans in private industry to provide protection for plan members.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).  Significantly, ERISA gives plan participants the right to sue insurers and claim administrators for plan benefits and breaches of fiduciary duty.  29 U.S.C. § 1132(a)(1), (3); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  By enacting ERISA, Congress "intended that a body of [f]ederal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980) (quoting 120 Cong. Rec. 29942 (1974) (remarks of Senator Javits)).  ERISA thus effectuates "a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life*, 481 U.S. at 54.  And it establishes a federal cause

of action to remedy failures to follow plan terms and conditions and to ensure the payment of benefits to insureds. *See Davila*, 542 U.S. at 210.

To effectuate its purpose, ERISA § 502(a) contains broad civil enforcement mechanisms, which state in relevant part:

> A civil action may be brought—(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(1)(B), (3). Section 502(a) "demonstrates Congress'[s] care in delineating the universe of *plaintiffs* who may bring certain civil actions." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000). And, by its plain terms, ERISA identifies "[plan] participants, beneficiaries, [and] fiduciaries" as among those empowered to bring a civil action under ERISA.[3] *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*,

---

[3] ERISA also permits the Secretary of Labor, States, and employers to bring civil actions in certain circumstances that are not relevant here. *See* 29 U.S.C. § 1132(a); *see also Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 22 F.4th 1086, 1089 n.3 (9th Cir. 2022).

789 F.2d 1374, 1378 (9th Cir. 1986) (per curiam); *see also Davila*, 542 U.S. at 210 ("If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits.").

Healthcare providers like South Coast are neither "participants" nor "fiduciaries" under ERISA. *See* 29 U.S.C. § 1002(7) ("The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ."); 1002(14)(A) (defining "fiduciary" to include "administrator, officer, trustee, or custodian" of an "employee benefit plan"). And we have long held that "health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions." *DB Healthcare*, 852 F.3d at 874; *see also Spinedex*, 770 F.3d at 1289 ("[A] non-participant health care provider . . . cannot bring claims for benefits on its own behalf."); *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 22 F.4th 1086, 1089 (9th Cir. 2022) ("Circuit case law has made clear that healthcare providers are not 'beneficiaries' within the meaning of ERISA."). Thus, under ERISA's clear terms, South Coast lacks direct authority to enforce its protections.

ERISA, however, permits the assignment of health and welfare benefits to a healthcare provider, and it allows such a provider to bring derivative claims on behalf of its patients. We held as much in *Misic*, where we stated that "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider." 789 F.2d at 1377. Indeed, a plaintiff, "as assignee of beneficiaries pursuant to assignments valid under ERISA, has [authority] to assert the claims of his assignors." *Id.* at

1379. We said the same in *Spinedex*, noting that patients may assign their right to benefits under ERISA and the assignees may bring derivative actions. *Spinedex*, 770 F.3d at 1289, 1292; *see DB Healthcare*, 852 F.3d at 876 ("[A] health care provider in appropriate circumstances *can* assert the claims of an ERISA participant or beneficiary."); *see also Bristol SL Holdings, Inc.*, 22 F.4th at 1089–90 (reasoning similarly).

Neither Anthem nor South Coast challenges this precedent, agreeing that South Coast cannot bring claims for benefits directly as an ERISA beneficiary. But South Coast asks us to conclude that it can enforce ERISA's protections derivatively, relying on its patients' assignments of their plan benefits to South Coast. Turning to the text of South Coast's "Assignment of Benefits" form, we agree that it can.

## B.

South Coast's "Assignment of Benefits" form validly assigns it the right to sue for non-payment of benefits under ERISA. Assignments are "interpreted 'in the same way as any other contract.'" *Knott v. McDonald's Corp.*, 147 F.3d 1065, 1067 (9th Cir. 1998) (quoting *Lowrance v. Hacker*, 888 F.3d 49, 51 (7th Cir. 1989)). "The question of what rights and remedies pass with a given assignment depends upon the intent of the parties." *Pac. Coast Agric. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975). "To make that determination [of intent], 'we look at the language and context of the authorization[].'" *DaVita Inc. v. Amy's Kitchen, Inc.*, 981 F.3d 664, 679 (9th Cir. 2020) (quoting *DB Healthcare*, 852 F.3d at 877); *see also Knott*, 147 F.3d at 1067 ("If a contract is clear and unambiguous, [the court] must determine the intention of the parties 'solely from the plain language of the contract[.]'" (quoting *MJ &*

*Partners Rest. Ltd. P'ship v. Zadikoff*, 995 F. Supp. 929, 930–31 (N.D. Ill. 1998) (some alteration in original))). Thus, we first address whether South Coast's "Assignment of Benefits" form is a valid assignment at all; and second, if it is, we determine the scope of that assignment and whether it permits South Coast's suit.

First, we conclude that South Coast's form is a valid assignment. South Coast's form is entitled "Assignment of Benefits." Although "the terms 'assign' or 'assignment'" are not "necessary to effectuate an assignment of rights," *DB Healthcare*, 852 F.3d at 876, their explicit presence in the title of a document certainly helps us to divine whether the parties intend that the form operate as a valid assignment, *see Brown v. BlueCross BlueShield of Tenn., Inc*, 827 F.3d 543, 544 n.1, 546–47 (6th Cir. 2016) (finding a limited assignment of rights for an "Assignment of Benefits Form" substantially resembling South Coast's form); *cf. Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." (citation omitted)). Additionally, South Coast's form (1) authorizes a patient's insurance company to pay South Coast "for the medical and surgical benefits allowable, and otherwise payable to [the patient] under [the patient's] current insurance policy"; and (2) requires the patient to pay "any charges not covered by the insurance payment." This wording tracks text that we have concluded conveys a valid assignment. *See, e.g.*, *DB Healthcare*, 852 F.3d at 876 (reasoning that a form authorizing the payment of benefits to a physician was a valid assignment of the "limited rights to payment under ERISA"); *Spinedex*, 770 F.3d at 1292 (finding a valid assignment in a form stating, in part, "[t]his

is a direct assignment of my rights and benefits under this policy" (emphasis omitted)). The form's wording clearly conveys that South Coast and its patients intended that it operate as a valid assignment for the payment of insurance benefits.

Second, we also conclude that the "Assignment of Benefits" form assigned South Coast the right to sue for non-payment of benefits. Admittedly, South Coast's form does not expressly state that South Coast may sue insurers on its patients' behalf. The form permits Anthem to pay South Coast directly, via check, and indicates that the form relates to South Coast's willingness to fill out claims-processing paperwork. Anthem argues that this provision means that the form assigns only the right to direct payment and that it does not encompass a legal right to sue for non-payment. But an assignment of the right to benefits generally includes the right to sue for nonpayment of benefits.

As before, our decisions in *Spinedex* and *DB Healthcare* guide us. In *Spinedex*, we addressed whether a plaintiff healthcare provider suffered an injury in fact when it stood in the shoes of its patients with respect to the payment of insurance benefits through an assignment-of-benefits form. 770 F.3d at 1291. The *Spinedex* form provided, in part, "[t]his is a direct assignment of my rights and benefits under this policy." *Id.* at 1292 (emphasis omitted). Although we ultimately determined that the plaintiff lacked constitutional standing, we confirmed that the plaintiff's patients had intended to assign it their "rights to bring suit for payment of benefits" under ERISA. *Id.* Likewise, in *DB Healthcare*, we held, albeit in a footnote, that "[a]n assignment of the right to receive payment of benefits *generally includes* the limited right to sue for non-payment under § 502(a)(1)(B), which empowers a participant or beneficiary to bring a civil

action 'to recover benefits due to her under the terms of the plan.'" 852 F.3d at 877 n.7 (emphasis added). And we concluded that the form—stating, "I Hereby Authorize My Insurance Benefits to Be Paid Directly to the Physician"— demonstrated the patients' intent to assign "the right to payment of benefits and the associated right to sue for non-payment." *Id.* at 876–77. It is true that, in *DB Healthcare*, we determined that the healthcare providers lacked "derivative authority to bring their claims." *Id.* at 876. But we held as much not because ERISA foreclosed the possibility, but because the healthcare providers' claims for injunctive and declaratory relief, and for damages based on recouped overpayments "f[e]ll outside the scope of those assigned rights." *Id.* Indeed, we held that plaintiffs' derivative suits could not proceed because they sought relief for ERISA violations and unlawful conduct far afield from the validly assigned right to sue for non-payment. *Id.* at 876–77.

Not so here. Following the logic in *Spinedex* and *DB Healthcare*, the scope of South Coast's patients' assignment of benefits clearly and necessarily includes the right to sue for non-payment of benefits under section 502(a) of ERISA. Like those cases' assignment forms, each of which transferred the right to benefits and the associated right to sue for non-payment of benefits, South Coast's "Assignment of Benefits" transfers to South Coast the right to "medical surgical benefits allowable, and otherwise payable to [its patients] under [their] current insurance policy." And, unlike *DB Healthcare*'s plaintiffs, South Coast does not seek a remedy beyond that payment.

We thus conclude that South Coast's patients assigned South Coast the right to sue for non-payment of benefits under section 502(a) of ERISA. Our conclusion aligns with

our sister circuits' opinions regarding derivative authority to sue via assignment under ERISA. *See, e.g.*, *Brown*, 827 F.3d at 546 ("[T]here is now a broad consensus that 'when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains [authority] to sue for that payment under ERISA § 502(a).'" (quoting *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015))); *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015) (noting that an assignment of benefits "confer[s] to Rojas *only* the right to pursue the participants' claims for payment"); *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352 (11th Cir. 2009) ("[A]n assignment furthers ERISA's purposes only if the provider can enforce the right to payment."); *I.V. Servs. of Am. v. Inn Dev. & Mgmt.*, 182 F.3d 51, 54 n.3 (1st Cir. 1999) (holding that the assignment of a right to payment "easily clear[ed]" the low hurdle for derivative authority to sue).[4]

To construe South Coast's "Assignment of Benefits" form otherwise, as Anthem encourages us to do, makes neither textual nor practical sense. Indeed, permitting South

---

[4] Anthem's citation to our unpublished decision in *Brand Tarzana Surgical Institute, Inc. v. International Longshore & Warehouse Union-Pacific Maritime Ass'n Welfare Plan*, 706 F. App'x 442 (9th Cir. 2017), and to the Eleventh Circuit's unpublished decision in *Sanctuary Surgical Centre, Inc. v. Aetna Inc.*, 546 F. App'x 846 (11th Cir. 2013), does not persuade us otherwise. The *Brand Tarzana* plaintiff could not bring a derivative claim under ERISA because the underlying insurance policy "unambiguously state[d] that Plan benefits are not subject to assignment and any attempt to do so shall be void." 706 F. App'x at 443. And the court in *Sanctuary Surgical Centre* held that providers lacked authority to sue when they attempted to rely on a direct-payment authorization assignment to bring a claim for breach of fiduciary duty. 546 F. App'x at 852. Neither situation is relevant here.

Coast to recover plan benefits, but precluding it from suing for the non-payment of those benefits by a single insurer, leaves South Coast with little legal recourse after "fronting" the costs of care. In this instance, South Coast would be required first to seek reimbursement from Anthem; when that fails (as it has here), it would have to file roughly 150 individual collection actions, seeking reimbursement from its patients in amounts varying from $7,095.00 to $116,920.55. Its patients could then pay South Coast; refuse to pay; or seek coverage from Anthem, likely resulting in potential individual actions against the insurer. The inefficient result would be numerous small lawsuits.

Such a reading not only contradicts our precedent and the clear terms of South Coast's "Assignment of Benefits" form, but it stymies Congress's purpose in enacting ERISA. *See Pilot Life*, 481 U.S. at 54 (noting Congress's intention to develop "prompt and fair claim settlement procedures" through ERISA). ERISA was intended to "protect . . . the interests of participants in employee benefit plans." 29 U.S.C. § 1001(b). Indeed, the "general goal" of ERISA is furthered by comprehensive and effective assignments of benefits. *Cf. Misic*, 789 F.2d at 1377; *accord Davila*, 542 U.S. at 208 ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."). As the Third Circuit noted, "[i]t does not seem that the interests of patients or the intentions of Congress would be furthered by drawing a distinction between a patient's assignment of her right to receive payment and the medical provider's ability to sue to enforce that right." *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 373. Recognizing derivative authority to sue, by contrast, serves ERISA's purpose by "making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating

the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." *Misic*, 789 F.2d at 1377. Construing an assignment of benefits as including the right to sue for non-payment thus increases patient access to healthcare and transfers any responsibility of litigating unpaid claims to the provider—an entity that is much better positioned to pursue those claims in the first place.

Of course, by confirming this general rule, we do not hold that *all* assignments of the right to benefits—regardless of who made the assignment and who received it—necessarily confer the right to sue under ERISA. As we have cautioned, concluding that Congress intended to authorize suits in the wrong circumstances could "be tantamount to transforming health benefit claims into a freely tradable commodity," involving the "endless reassignment of claims" and permitting "third parties with no relationship to the beneficiary to acquire claims solely for the purpose of litigating them." *Simon v. Value Behav. Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000), *amended by* 234 F.3d 428 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007). We have thus declined to extend authority to sue to an attorney "who aggregated hundreds of unrelated claims from numerous different health facilities, akin to a bill-collector." *Bristol SL Holdings, Inc.*, 22 F.4th at 1090 (discussing and distinguishing our decision in *Simon*). This case differs. South Coast is a healthcare provider with a direct financial stake in the outcome and an established relationship with its patients through its "Assignment of Benefits" form. Finding that its patients' assignment of benefits includes the right to file suit under ERISA for the non-payment of benefits is consistent with our precedent, our sister circuits' caselaw,

and ERISA's purpose. And our decision is limited to whether section 502(a) of ERISA permits a healthcare provider to bring a derivative suit, seeking the payment of benefits, when it has been given a valid assignment to do so.

**REVERSED and REMANDED.**